UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IN RE SAG HEALTH DATA BREACH LITIGATION

This document relates to: ALL ACTIONS

Case No.: 2:24-CV-10503-MEMF-JPR

*Consolidated Action*

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [DKT. NO. 40]**

Before the Court is a Motion for Preliminary Approval of Class Action Settlement, filed by Plaintiffs Matthew Rouillard, Kristy Munden, Lee Wilkof, Steven Barr, and Massimiliano Furlan ("Plaintiffs"). Dkt. No. 40. The Court finds that the settlement is fair, reasonable, and adequate, and that the class can be certified for purposes of settlement, and that the proposed plan for notice to class members is sufficient. For those reasons, the Motion is GRANTED.

## I. <u>Background</u>

### A. Factual Background[1]

This is a consolidated action comprised of the following cases: *Rouillard v. SAG-AFTRA Health Plan*, No. 2:24-cv-10503; *Wilkof v. SAF-AFTRA Health Plan*, No. 2:24-cv-10626; *Barr v. SAG-AFTRA Health Plan*, No. 2:24-cv-10642; and *Furlan v. SAG-AFTRA Health Plan*, No. 2:24-cv-10691. *See* Order Granting in Part Motion to Consolidate and Appoint Interim Class Counsel, Dkt. No. 24, at 10-11.

Defendant SAG-AFTRA Health Plan ("SAG Health") is a labor-management trust established under California law. Dkt. No. 1 ("Compl.") ¶ 20. SAG Health provides a comprehensive health care benefits program for eligible participants and their dependents in the entertainment industry. *Id.* ¶ 1. Entertainment workers earn eligibility through employment with producers who have signed a collective bargaining agreement with the Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA"). *Id*. ¶ 1. Plaintiffs Matthew Rouillard and Kristy Munden are SAG-AFTRA members who are enrolled in SAG Health. *Id.* ¶¶ 11, 13-14.

To participate in SAG Health, members entrust SAG Health with sensitive personal information—including names, Social Security numbers, and sensitive medical information. *Id.* ¶¶ 2-3. Plaintiffs allege, however, that SAG Health failed to properly safeguard their members' private information. *Id.* ¶ 3. So, on December 2, 2024, when SAG Health experienced a data breach, Plaintiffs' private information was compromised. *Id.* ¶¶ 3-4. As a result, Plaintiffs allege that their personal data was disclosed to an unauthorized criminal third party, causing Plaintiffs harm. *Id.* ¶ 4.

### B. Procedural History

Matthew Rouillard and Kristy Munden filed this action in this Court on December 5, 2024. *See* Compl.

---

[1] The following factual background is derived from Plaintiffs Matthew Rouillard and Kristy Munden's Complaint. Dkt. No. 1 ("Compl."). The Court makes no finding on the truth of these allegations and includes them only as background.

On December 30, 2024, Rouillard and Munden, together with the plaintiffs in the related cases (together, "Plaintiffs"), filed a joint Motion to Consolidate Related Actions and Appoint Interim Class Counsel. Dkt. No. 13. On February 25, 2025, this Court granted the motion to consolidate in part. Dkt. No. 24.

On July 31, 2025, Plaintiffs filed their Consolidated Complaint. Dkt. No. 26. It states five causes of action: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) negligence; (3) invasion of privacy; (4) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.*; and (5) violations of California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq*. *See id.*

On August 12, 2025, the parties jointly filed a Notice of Settlement. Dkt. No. 27. They informed this Court that a settlement in principle had been reached, and that they anticipated filing the instant Motion along with a finalized Settlement Agreement by September 12, 2025. *See id.* at 1. Accordingly, on August 13, 2025, this Court stayed and administratively closed the case pending the finalization of the parties' settlement. Dkt. No. 28. On September 10, 2025, and October 8, 2025, the parties jointly requested extensions of time to file the instant Motion and Settlement Agreement. Dkt. Nos. 30, 32. This Court granted both deadline extensions. Dkt. Nos. 31, 35.

On November 14, 2025, Plaintiffs filed their Motion for Preliminary Approval of Class and Representative Action Settlement, along with several supporting declarations and exhibits (which include the Settlement Agreement). Dkt. No. 40-1 ("Motion"). Plaintiffs represent that the Motion is unopposed, Dkt. No. 40 ¶ 6, and no opposition has been filed. The Court held a hearing on the Motion on Thursday, January 8, 2026. At the hearing, the Court discussed with Plaintiffs possible changes to the notice plan and directed Plaintiffs to file updated documents. Dkt. No. 47. Plaintiffs did so on January 14, 2026. Dkt. No. 48 ("Updated Notices").

**C. The Terms of the Proposed Settlement**

i. <u>Proposed Class</u>

The proposed class as defined by the Settlement Agreement, Dkt. No. 40-3, includes: "All living persons who were mailed notification of the Data Incident indicating that their PII and/or PHI may have been impacted in the Data Incident that occurred in SAG-AFTRA's system between

September 17 to September 18, 2024." Dkt. No. 40-3 ("Agreement") ¶ 1.30. Excluded from the Settlement Class are: (i) Defendant and its respective officers and directors; (ii) the Judge(s) to whom the action is assigned and any member of those Judges' staffs or immediate family members; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge. *Id.* The parties estimate that the class includes approximately 94,546 individuals. *Id.* at 2. Plaintiffs estimate that, for class members who elect to receive a *pro rata* share from the Settlement Fund (as opposed to actual reimbursement for out-of-pocket losses), California residents will receive between $96 and $482, and non-California residents will receive between $48 and $241. *See* Motion at 4. On a per capita basis, dividing the total settlement fund by the total number of class members (before fees and expenses), recovery is approximately $10.05 per class member. *See id.* at 14.

ii. <u>Payment Terms</u>

SAG Health agrees to pay a total of $950,000 into a common settlement fund established by settlement class counsel. Agreement ¶ 1.33, 2.2. Class members who submit a claim form for certain claimed benefits will receive payment from this fund; the priority of those claims will be (1) out-of-pocket losses caused by the data breach, up to $5,000, and (2) pro rata cash payments. *Id.* ¶¶ 2.3; 2.3.1. If the settlement fund does not sufficiently cover all out-of-pocket losses, those claims will be reduced pro rata to account for the amount of remaining funds. *Id.* Any remaining funds, after payment of all approved claims, will be distributed pro rata to all valid claimants. *Id.*

Regardless of whether a class member submits a claim, all settlement class members will also qualify for eighteen months of credit monitoring and identity protection services, at SAG Health's expense, separate from the funds allocated to the settlement fund. *Id.*

iii. <u>Named Plaintiffs' Enhancements</u>

The named plaintiffs are not automatically entitled to enhancement payments under the Agreement. *See id.* ¶ 7. Subject to Court approval, they may move the Court for service awards of up to $2,500 each.[2] *Id.* ¶ 7.3.

iv. Attorneys' Fees and Costs

Class counsel shall, pending Court approval, receive fees in an amount not to exceed one third of the amount of the settlement fund (33.3% of $950,000, or $316,650). *Id.* ¶ 7.2. Class counsel may also move to receive reimbursement of a reasonable amount of litigation costs and expenses determined by the Court. *Id.* Plaintiffs have represented that counsel intends to seek reimbursement of up to $15,000 in costs. *See* Motion at 7.

v. Settlement Administration Costs

Settlement administration costs will be deducted from the settlement fund. Agreement ¶ 1.11.

vi. Releases

Class members shall fully release the Released Persons from "any and all past, present, and future claims and causes of action, including Plaintiffs' unknown claims, that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons," with relationship to the Data Incident or any of its related circumstances. *Id.* ¶ 1.26.

The Released Persons are Defendant and its parents, subsidiaries, divisions, and related or affiliated entities, as well as those entities' predecessors, successors, directors, officers, principals, agents, attorneys, shareholders, servants, representatives, advisors, consultants, vendors, partners, contractors, subrogees, insurers, and reinsurers. *See id.* ¶ 1.27.

vii. Notice to Settlement Class

The settlement administrator shall prepare, print, and mail to the proposed class a Notice of Proposed Settlement of Class Action. *See id.* ¶ 1.35; *see also* Agreement, Exs. C & D ("Short Notice"); Dkt. No. 48-2 and -3 ("Amended Short Notice"). This shall be sent via email for class

---

[2] It appears that the Agreement refers interchangeably to these awards as Service Awards and Service Payments. *See* Agreement ¶ 7.3. This Court understands that these terms refer to one single payment schema for the class representatives, such that they may move this Court for up to $2,500 each.

members for whom SAG Health has email addresses, or via first-class mail for class members for whom SAG Health has physical mailing addresses. *Id.*; *see also* Declaration of Frank Ballard Regarding Notice Plan and Settlement Administration, Dkt. No. 40-12 ("Ballard Decl."), ¶¶ 6-12. The Agreement contemplates that notices shall be sent within thirty days of this Court's order preliminarily approving the settlement. *See* Agreement ¶ 1.21.

Prior to sending the notices to class members, the Settlement Administrator will work with class and Defendant's counsel to finalize the language, and send proofs/test emails for counsel's approval. Ballard Decl. ¶¶ 6, 8. The Settlement Administrator will verify addresses by sending "the Class Member Information through the United State Postal Service's ('USPS') National Change of Address ('NCOA') database." *Id.* ¶ 10. Where mail is returned as undeliverable without a forwarding address, an advanced address search process will occur in an effort to find a more current address. *Id.* ¶ 12. The Settlement Administrator will also monitor whether emails are rejected or appear to bounce back. *Id.* ¶ 7. The Settlement Administrator estimates that, through this process and assuming that "data received is relatively up to date," direct notice will likely reach 92% of the proposed Settlement Class Members. *Id.* ¶ 14.

The mailed and emailed notices will detail instructions for class members to exclude themselves, which will be detailed in full on the settlement website. *See* Amended Short Notice.

## II. <u>Applicable Law</u>

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement where either the class has been certified or the class will be certified for purpose of settlement. *See* Fed. R. Civ. P. 23(e)

To preliminarily approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Specifically, the Court must examine the following factors, per Rule 23:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit has provided further guidance on how a court should approach this analysis. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). In performing the Rule 23(e)(2) analysis described above to determine whether a settlement is fair, the court should consider "some or all" of the factors described below:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Id.* at 963.

The role of a court considering a class settlement is a limited one, and the court should only intrude on "what is otherwise a private consensual agreement" "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

If a class has not yet been certified, a court considering a class settlement must conditionally certify a class for purposes of settlement by determining if the proposed class satisfies the requirements of Rule 23(a) and one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## III. Discussion

### A. The proposed settlement is fair, reasonable, and adequate.

Having reviewed the proposed settlement, the Court finds that it is fair, reasonable, and adequate. The factors considered are discussed in more detail below. Although the Court has some small concerns, these concerns can be addressed when the parties move for final approval of the settlement based on later developments.

i. <u>The class representatives and class counsel have adequately represented the class.</u>

The Court finds that all evidence suggests that the class representatives and class counsel have adequately represented the class.

First, the Court notes that although Plaintiffs' claims are plausible, it does not appear to be a certainty that Plaintiffs would prevail if they pursued this action to trial on the merits, as Plaintiffs note. *See* Motion at 12. Plaintiffs note that, though maximum statutory damages under the CMIA and CCPA may appear high in theory, recovery of those amounts would be uncertain. *See id.* at 15 (discussing courts in the Ninth Circuit who have dismissed CCPA claims as impermissibly duplicative of CMIA claims, and the possible requirement that Plaintiffs show that their medical information was actually viewed by an unauthorized third party). It is also difficult to ascertain the strength of Plaintiffs' case because of the relatively few data breach cases that have been tried to verdict. *See Sankar v. Calif. Northstate Univ.*, No. 2:24-CV-00473, 2025 WL 3539089, at *10 (E.D. Cal. Dec. 10, 2025) (collecting cases). Put another way, there is no guarantee (or anything close to a guarantee) that Plaintiffs would win more than the settlement amount at trial. The amount agreed to in settlement is substantial, and it appears to fairly reflect the strength of Plaintiffs' case.

Further litigation would have led to greater risk and greater expense. The action would have taken significant time to complete, as the class had not yet been certified and as formal discovery had not yet started. *See id.* at 16-17. All of this is appropriate to consider in analyzing Plaintiffs' decision to settle. *See Rodriguez*, 563 F.3d at 963 (A court should consider "the risk, expense, complexity, and likely duration of further litigation;" "the risk of maintaining class action status throughout the trial;" and "the extent of discovery completed, and the stage of the proceedings").

With all of this in mind, the Court finds that the class representatives and class counsel's decision to settle was adequate representation of the class. This decision came approximately eleven months after this action was first filed, and it appears that the named plaintiffs and class counsel diligently pursued their claims during that period. All class members will receive several hundred dollars of compensation for the harms suffered, without further delay and with risks reduced.

/ / /

/ / /

ii. <u>The proposal was negotiated at arm's length.</u>

The settlement was negotiated through four months of arms' length negotiations. *See* Motion at 3; *see also* Joint Declaration of Plaintiffs' Counsel Gregory Haroutunian, John J. Nelson and Yana Hart in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 40-2 ("Counsel Decl.") ¶ 7. Though the Parties initially scheduled a private mediation with a neutral mediator, the parties reached agreement on core terms the day before the mediation, and mutually concluded that proceeding with formal mediation would not be cost-effective or necessary. *Id.* The Court need not dwell on this factor—the Court finds that evidence on this point supports granting the Motion.

iii. <u>The relief for the class is adequate.</u>

The Court finds that the relief for the class is adequate.

First, class members will be adequately compensated, at between $48 and $482 each. *See id.* ¶ 22. For the reasons discussed above, the evidence suggests that this is adequate compensation in light of the strength of Plaintiffs' case and the risks it faced. Although the settlement does not reflect the full potential of recovery had Plaintiffs prevailed at trial, this number appears to reflect considerations as to the strength of the case and the uncertainties that it faced.

Further, in addition to the other factors discussed, it is worth noting that Plaintiffs' counsel's view is that this settlement "adequately address[es] the type of injuries and repercussions from a data breach incident," and is "commensurate with or better than similar data privacy settlement precedents nationwide." *See id.* ¶¶ 19-20; *Rodriguez*, 563 F.3d at 963 (noting that a court should consider "the experience and views of counsel"). Plaintiffs' counsel is experienced, *see* Counsel Decl. ¶¶ 3-5, and the Court sees no evidence that would suggest that the Court should question Plaintiffs' counsel's judgment as to adequacy or question whether counsel's opinion on this is issue sincerely held.

Second, the Court sees no issues with the proposed method of distributing the settlement money to claimants and processing claims. The settlement administrator will divide funds on a pro rata basis, with due priority for covered out-of-pocket expenses that class members incurred following the data breach. The Court finds this adequate.

Third, the attorneys' fees (33%) and costs ($15,000 at most) are also reasonable. These do not undermine the adequacy of the settlement.

Fourth, the release described in the settlement is reasonable and does not undermine the adequacy. It appears that the release is limited in nature and directly tied to the facts alleged in the action. Agreement ¶¶ ¶ 1.26-.27.

iv. The proposal treats class members equitably relative to each other.

The overall scheme through which the money will be distributed—prioritizing reimbursement of out-of-pocket expenses, then pro rata—treats class members equitably relative to each other. The Court sees no issues with this portion.

The Court notes that the named plaintiffs may, subject to Court approval, receive $2,500 as Service Awards, separate from the relief the other class members receive. This appears reasonable to this Court, as typical class members who can demonstrate applicable out-of-pocket losses will be entitled to recover up to $5,000 each from the settlement fund. *See* Agreement ¶ 2.3.1. Nevertheless, as class members who opt for pro rata relief may be entitled to as little as $48—about one fiftieth of each Service Award—the Court is not entirely convinced as to the fairness of the amount of this enhancement. The Court will allow other class members to review the settlement before deciding whether this is equitable in the final settlement.

**B. The class may be certified for the purpose of settlement.**

Next, the Court must determine whether the class may be preliminary and conditionally certified for settlement purposes. Class certification is a prerequisite to preliminary settlement approval. *See Amchem*, 521 U.S. at 614. In order to be certified, a class must comply with the requirements of Rule 23(a) and fit into a category described in Rule 23(b). *See id.*; *see also* Fed. R. Civ. P. 23(a)–(b).

The Court finds that these requirements are met.

i. The numerosity requirement is met.

The first requirement of Rule 23(a) is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, this requirement is plainly met—the parties estimate the settlement class will be 94,546 people, and the Ninth Circuit has held that a class

of "300+" members is sufficiently large that joinder would be impractical. *See* Agreement at 2; *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). The class here, therefore, is sufficiently numerous.

ii. <u>The commonality requirement is met.</u>

The second requirement of Rule 23(a) is that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a "single common question will do." *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011). "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544 (9th Cir. 2013). Instead, commonality only requires "that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 351), *overruled in part by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

Here, the event in question—the data breach announced by SAG Health on December 2, 2024, *see* Compl. ¶ 2—forms the basis of a common question that is common to the class as defined. Class members' personal information would allegedly have been compromised at the same time, due to a common cause. *See id.* ¶ 118. It is plain from the Complaint that Plaintiffs are describing alleged common experiences, not individual ones. *See id.* And these allegations are supported by sworn declarations from the named plaintiffs filed alongside this Motion. *See* Dkt. Nos. 40-7 to -11 (confirming that the allegations in the Complaint accurately reflect data breach incident). This is sufficient to show common practices that create common questions or law or fact. The commonality requirement is met.

iii. <u>The typicality requirement is met.</u>

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth Circuit does not "insist that the named plaintiffs' injuries be identical with those of the

other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Here, the typicality requirement is met. The named plaintiffs suffered similar injuries to those alleged on behalf of the class. *See* Compl. ¶ 118; *see also* Dkt. Nos. 40-7 to -11 (sworn declarations from named plaintiffs). And there is no indication that there are any defenses available to SAG Health that are specific to the named plaintiffs. All evidence, therefore, suggests that the claims and defenses as to the named plaintiffs are typical.

iv. The adequacy requirement is met.

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts ask two questions in this inquiry: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Here, there is no evidence of any conflicts of interests between the named plaintiffs or their counsel and other class members. And all evidence suggests that they have (and will) prosecute the action vigorously on behalf of the class. Thus, this requirement is met.

v. The action fits into a Rule 23(b)(3) category as required.

For a class to be certified, it must not only satisfy Rule 23(a), but also fit within a category defined by Rule 23(b). *See* Fed. R. Civ. P. 23. Here, Plaintiffs seek certification under Rule 23(b)(3). *See* Motion at 11. This requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1027.

Here, the key issue in the action is whether SAG Health failed to safeguard the personal information with which class members entrusted it. *See* Compl. ¶ 3; *see also* Dkt. No. 26 ¶ 3 (consolidated complaint, alleging the same). This common question of law and fact hangs over all

claims. This question makes the class sufficiently cohesive that a representative action is a fair means of adjudication. Thus, Rule 23(b)(3)'s requirements are met.

### C. Notice and Administration

Under Rule 23(c)(2)(B), when a class is certified for the purpose of settlement, the Court must "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Notice is satisfactory if it "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted). It "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Id.*

The notice plan as originally filed appeared generally satisfactory to this Court. At the hearing on January 8, 2026, however, this Court discussed two concerns with the notice plan with the Plaintiffs. First, this Court noted that the then-proposed notice plan provided for an unnecessarily complicated process to be excluded from the settlement. The originally proposed notice plan would have required a class member who wishes to opt out, or object, to navigate to the settlement website, follow the instructions provided, and email or mail notice to the Claims Administrator. *See* Long Notice at 8–9. This plan was more burdensome to class members than necessary. Second, the Short Notices as proposed did not clearly state the "class claims, issues, or defenses," as required by Rule 23(c)(2)(B)(iii), and needed to be revised accordingly. In light of these two concerns, the Court instructed Plaintiffs to file amended notice documents.

The newly filed Updated Notices address this Courts' concerns. As to this Court's first concern, the parties' proposed Long Notice now clarifies that the opt-out form may be filled out

online, and that no mailing or emailing proposed opt-out forms will be required. *See* Dkt. No. 48-1 at 10 (amended Long Notice). And second, the notice plan now clarifies the class claims, issues, and defenses. *Id.* at 6. To that end, this Court is satisfied that the proposed updated notice plan complies with Rule 23(c), and that the notices themselves include the details required.

## IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion is GRANTED;
2. The class notice is APPROVED;
3. The parties shall include March 23, 2026, as the date of preliminary approval in the class notice; and
4. Within seven days of this Order, Plaintiffs must file an updated request as to further hearings and deadlines in this action, including a proposed date and time for the final settlement approval hearing that shall be included in the class notice.

IT IS SO ORDERED.

Dated: March 25, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge