Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
333 University Avenue, Suite 200
Sacramento, CA 95825
Telephone: (916) 823-6955
*gregory@emeryreddy.com*

*[Additional counsel on signature page]*

*Settlement Class Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re SAG Health Data Breach Litigation*<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | CASE NO. 2:24-cv-10503-MEMF-JPR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8B<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 24, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8B, 8th Floor of the United States District Court for the Central District of California, First Street U.S. Courthouse, 350 W 1st Street, Los Angeles, California 90012, the Hon. Maame Ewusi-Mensah Frimpong, presiding, Plaintiffs Mathew Rouillard, Kristy Munden, Lee Wilkof, Steven Barr, and Massimiliano Furlan ("Plaintiffs") hereby do and will move the Court for an Order for final approval of the Settlement and certification of

the Settlement Class pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").

In so moving, Plaintiffs respectfully request the Court: (1) approve the Class Action Settlement Agreement ("Settlement Agreement" or "SA") as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel Gregory Haroutunian of Emery Reddy, PC, Yana Hart of Clarkson Law Firm, P.C., and John J. Nelson of Milberg, PLLC; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of Gregory Haroutunian, Yana Hart, and John J. Nelson in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Joint MFA Decl."), the Declaration of Elias Rose of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Kroll Decl.") and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

Dated: August 13, 2026

*<u>/s/ Gregory Haroutunian</u>*
Gregory Haroutunian, (SBN 330263)

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. PROCEDURAL HISTORY ..... 2

IV. THE SETTLEMENT TERMS ..... 3

A. The Settlement Class ..... 3

B. Settlement Benefits ..... 4

1. Monetary Relief ..... 4

2. Credit Monitoring and Identity-Protection Services Benefit ..... 4

3. Business Practice Commitments ..... 4

4. Class Notice and Claims Administration ..... 5

C. Attorneys' Fees and Expenses and Service Awards to Plaintiff ..... 5

D. Release ..... 6

V. CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS ..... 6

VI. LEGAL ARGUMENT ..... 7

A. The Court Should Certify the Class for Settlement Purposes ..... 7

1. The Rule 23(a) Requirements Are Met for Purposes of Settlement ..... 7

2. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement ..... 9

B. The Court Should Finally Approve the Settlement ..... 11

1. The Strength of Plaintiffs' Case ..... 11

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..... 12

3. The Risk of Maintaining Class Action Status Through Trial ..... 13

4. Amount Offered in Settlement ..... 14

5. The Extent of Discovery Completed and the Stage of Proceedings ..... 15

6. The Experience and Views of Counsel ..... 16

7. The Reaction of the Class Members to the Proposed Settlement ....................... 16

8. Lack of Collusion among the Parties ................................................................ 17

9. The Settlement Treats Settlement Class Members Equitably ............................ 17

C. The Court Should Affirm Its Appointment of Settlement Class Counsel and Class Representatives ..........................................................................................18

D. The Notice Program Comports with Due Process ......................................................18

VII. CONCLUSION ..........................................................................................................19

# TABLE OF AUTHORITIES

**Page**

*Amchem Prods. v. Windsor*
521 U.S. 591 (1997) ........ *Passim*

*Atkinson et al. v. Minted, Inc.*
No. 3:20-cv-03869 (N.D. Cal.) ........ 6

*Beasley v. TTEC Servs. Corp.*,
No. 22-CV-00097-PAB-STV, 2024 WL 710411 (D. Colo. Feb. 21, 2024) ........ 13

*Calderon v. Wolf Firm*
No. 8:16-cv-01266, 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ........ 15

*Capaci v. Sports Rsch. Corp.*
No. CV 19-3440 FMO (FFMx), 2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........ 9

*Carter v. Vivendi Ticketing US LLC*
No. 8:22-01981-CJC, 2023 WL8153712 (C.D. Cal.) ........ 6

*Charlebois v. Angels Baseball, LP*
No. 8:10-cv-00853, 2011 WL 2610122 (C.D. Cal. June 30, 2011)........ 7

*Chester v. TJX Cos.*
No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ........ 12

*Chua v. City of L.A.*
No. 2:16-cv-00237-JAK-GJS, 2017 WL 10776036 (C.D. Cal. May 25, 2017) ........ 9

*Churchill Vill., LLC v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ........ 19

*Cochran, et al. v. Kroger Co.*
No. 5:21-cv-01887 (N.D. Cal.) ........ 6

*Corona v. Sony Pictures Entertainment, Inc.*
No. 2:14-cv-09600 (C.D. Cal.) ........ 6

## TABLE OF AUTHORITIES

**Page**


*Dennis v. Kellogg Co.*
No. 3:09–CV–1786-L-WMC, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................. 11,12

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974)........................................................................................................ 18

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) ........................................................................................ 7

*Forcellati v. Hyland's, Inc.*
No. 2:12-cv-01983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)............................................. 8

*Franklin v. Kaypro Corp.*
884 F.2d 1222 (9th Cir. 1989) ........................................................................................ 11

*Gaston v. FabFitFun, Inc.*
No. 2:20-cv-09534-RGK-E, 2021 WL 3362028 (C.D. Cal. Apr. 2, 2021). ............................ 14

*Gordon v. Chipotle Mexican Grill, Inc.*
No. 1:17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .......................................... 13

*Gregorson v. Toshiba America Business Solutions, Inc.*
No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589 (C.D Cal. 2025) ..................................... 10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 8, 9

*Hashemi v. Bosley*
No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117 (C.D. Cal. 2022)……………...*Passim*

*Hillman v. Lexicon Consulting, Inc.*
No. 5:16-cv-01186, 2017 WL 10434013 (C.D. Cal. Oct. 12, 2017)……………………16

*Hudson v. Libre Technology Inc.*
No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020)......................... 17

# TABLE OF AUTHORITIES

**Page**

*In re Anthem Inc. Data Breach Litig.*
327 F.R.D. 299 (N.D. Cal. 2018) ........ 12

*In re Blackhawk Network Data Breach Litig.*
No. 22-cv-07084-CRB (N.D. Cal.) ........ 14

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011) ........ 11

*In re Corrugated Container Antitrust Litig.*
643 F.2d 195 (5th Cir. 1981) ........ 14

*In re Hyundai & Kia Fuel Economy Litig.*
926 F.3d 539 (9th Cir. 2019) ........ 8

*In re Kannact, Inc.*
No. 6:23-cv-01132 (D. Ore.) ........ 14

*In re MRV Communs., Inc. Derivative Litig.*
No. CV 08-03800 GAF (MANX), 2013 WL 2897874 (C.D. Cal. June 6, 2013) ........ 14

*In re Netgain Tech., LLC*
No. 0:21-cv-01210, 2025 WL 3063288 (D. Minn. Nov. 3, 2025) ........ 12

*In re Sonic Corp. Customer Data Sec. Breach Litig.*
No. 1:17-md-02807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019). ........ 12,14

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 17

*In re Target Corp. Customer Data Sec. Breach Litig.*
MDL No. 14-2522, 2015 WL 7253765 (D. Minn. Nov. 17, 2015) ........ 13

*Just Film, Inc. v. Buono*
847 F.3d 1108 (9th Cir. 2017) ........ 8

# TABLE OF AUTHORITIES

**Page**

*Keegan v. Am. Honda Motor Co.*
284 F.R.D. 504 (C.D. Cal. 2012) ........................................ 9

*Krant v. UnitedLex Corp.*
No. 2:23-cv-02443-DDC-TJJ, No. 2024 WL 5187565 (D. Kan. Dec. 20, 2024)........ 12

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998) ........................................ 12

*Longest v. Green Tree Servicing LLC*
308 F.R.D. 310 (C.D. Cal. 2015) ........................................ 8

*McDaniel v. Toshiba Glob. Com. Sols., Inc.*
No. 8:24-cv-01772-FWS-ADS, 2025 WL 3190888, (C.D. Cal. Oct. 3, 2025) ........ 12

*Nguyen v. Crystal Bay Casino*
No. 3:23-cv-00092, (D. Nev.) ........................................ 14

*Mikell v. Tycon Med. Sys., Inc.*
No. 2:25-cv-00019, 2025 WL 720001 (E.D. Va. Mar. 6, 2025)........................ 13

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ........................................ 16

*Paz v. AG Adriano Goldschmeid, Inc.*
No. 3:14-cv-01372, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016)........................ 13

*Reynoso v. All Power Mfg. Co.*
No. 8:16-cv-01037 JVS-JCG, 2018 WL 5906645 (C.D. Cal. Apr. 30, 2018)........ 9

*Sankar v. Cal. Northstate Univ., LLC*
No. 2:24-cv-00473-DAD-JDP, 2025 WL 3539089 (E.D. Cal. Dec. 10, 2025) ........ 18,19

*Smith v. Specialty Networks LLC*
No. 1:24-cv-00286, 2025 WL 1944022 (E. D. Tenn. July 15, 2025) ........................ 12

## TABLE OF AUTHORITIES

**Page**

*Tyson Foods, Inc. v. Bouaphakeo*
136 S. Ct. 1036 (2016) .......... 9,10

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) .......... 7

*Zinser v. Accufix Rsch. Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001). .......... 9

## OTHER AUTHORITIES

**Page**

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.) .......... 18

4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) .......... 16

MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). .......... 7

## RULES

**Page**

Fed. R. Civ. P. 23 .......... 7

Fed. R. Civ. P. 23(a) .......... 7

Fed. R. Civ. P. 23(a)(1) .......... 7

Fed. R. Civ. P. 23(a)(3) .......... 8

Fed. R. Civ. P. 23(a)(4) .......... 8

Fed. R. Civ. P. 23(b)(1), (2) or (3) .......... 9

Fed. R. Civ. P. 23(c)(2)(B) .......... 18

Fed. R. Civ. P. 23(e) .......... 11, 17

Fed. R. Civ. P. 23(b)(3) .......... 9, 10, 19

Fed. R. Civ. P. 23(e)(2)(D) .......... 17

**RULES**

**Page**

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) ........................................................................................ 18

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................................ 18

# I. INTRODUCTION

Plaintiffs move final approval of the Class Action Settlement Agreement and Release ( "Settlement Agreement" or "SA"), ECF No. 40-3,[1] which resolves this litigation on a classwide basis. The parties filed the Settlement Agreement and Plaintiffs' Unopposed Motion for Preliminary Approval ("MPA"), ECF No. 40, on November 14, 2025. After directing revisions to the proposed notices, the Court entered its Preliminary Approval Order on March 25, 2026, conditionally certifying the Settlement Class, appointing Settlement Class Representatives and Settlement Class Counsel, and approving the notice program. Ord. re Mtn. for Preliminary Approval of Class Action Settlement (the "PAO"), ECF No. 49.

This settlement—which makes available to every Settlement Class Member considerable monetary relief—represents an excellent resolution of this high-risk, complex litigation. The Parties also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. Indeed, the Settlement Agreement provides direct notice via email to Class Members for whom Defendant had email addresses and United States Postal Service Mail for whom Defendant had physical mailing addresses. SA ¶ 1.35. Moreover, the Settlement Agreement provides for the creation of a toll-free number and website to disseminate information to Settlement Class Members. *Id.* ¶ 3.3.

The Claims Deadline was July 23, 2026, and the Objection and Opt-Out Deadline was June 23, 2026. Kroll Decl. ¶¶ 17, 20. After accounting for undeliverable notice, 90,953 Class Members are likely to have received Direct Notice, equating to a reach rate of 96.5%. *Id.* ¶ 14. With the exclusion and objection deadline long since passed, zero objections have been filed, and four individuals have requested exclusion from this settlement. *Id.* ¶ 21. The reaction of the Settlement Class has been overwhelmingly positive, as 9,164 claims have already been received by the Claims Administrator, representing an impressive, and substantially higher than average in a data breach class action, 9.72% claims rate. *Id.* ¶ 18.

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement.

The settlement undoubtedly is fair, reasonable, and adequate, as the Court preliminarily found in its PAO. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II. STATEMENT OF FACTS

On or between September 17-18, 2024, Defendant SAG-AFTRA Health Plan ("SAG-AFTRA" or "Defendant") (together with Plaintiffs, the "Parties") experienced a cybersecurity incident during which unauthorized third parties gained access to certain information maintained by Defendant. *See* SA ¶ 1.14. Plaintiffs allege that, as a result of the Data Incident, cybercriminals accessed and obtained sensitive and confidential personal information belonging to Plaintiffs and Class Members, including names, Social Security numbers ("personally identifiable information" or "PII"), and, in some instances, health information associated with claims, health insurance information, and health plan participant identification number ("protected health information" or "PHI") (collectively, "Private Information"). *Id.* Following the discovery of the Data Incident, SAG-AFTRA identified approximately 94,546 individuals[2], whose Private Information was impacted, and on or about December 2, 2024, began to notify said individuals. *See* SA, at 2.

## III. PROCEDURAL HISTORY

On December 5, 2024, Plaintiffs Mathew Rouillard and Kristy Munden, on behalf of themselves and on behalf of all others similarly situated, filed a class action complaint in the Central District of California. *Id.* On December 10, 2024, Plaintiff Lee Wilkof, individually and on behalf of all others similarly situated, filed a class action complaint in the Central District of California. *Id.* On December 10, 2024, Plaintiff Steven Barr also filed a class action complaint. *Id.* On December 13, 2024, Massimiliano Furlan filed a class action complaint in the Central District of California. *Id.*

On January 2, 2025, Plaintiffs filed the Motion to Consolidate Related Cases and Appoint Interim Class Counsel. ECF Nos. 13, 13-1. On March 3, 2025, the Court consolidated these actions

[2] SAG-AFTRA indicated that it had sent notice to 94,546 individuals impacted by the breach. However, after review and de-duplication, it was established that the Settlement Class size was 94,233. Kroll Decl. ¶ 5.

under the lead case with the caption, *In re SAG Health Data Breach Litigation*, No. 2:24-cv-10503-MEMF-JPR (the "Litigation"). *See* ECF No. 24.

After filing the Consolidated Complaint, Plaintiffs' counsel continued to investigate the facts of the Data Incident and Defendant's responsive measures, leading to informed settlement negotiations. Joint MFA Decl. ¶ 5. Over the course of the next several months, the Parties engaged in extensive, arms'-length settlement negotiations. *Id.* ¶ 6. After spending considerable time and effort negotiating, the parties reached an agreement on the principal terms of a class wide settlement and eventually executed the original settlement agreement dated November 13, 2025. SA, at 1. Plaintiffs then moved for Preliminary Approval on November 14, 2025, which this Court took under submission and held in abeyance pending submission of an Amended Long Notice and Short Notice. *See* PAO, at 3. Following the submission of the Amended Long and Short Notices, this Court preliminary approved the Settlement Agreement on March 25, 2026, and the Claims Administrator began the notice program. Joint MFA Decl. ¶ 7.

## IV. <u>THE SETTLEMENT TERMS</u>

### A. The Settlement Class

The Settlement provides relief for the following Class: "[A]ll living persons who were mailed notification of the Data Incident indicating that their PII and/or PHI may have been impacted in the Data Incident that occurred in SAG-AFTRA's system between September 17 to September 18, 2024." SA, ¶ 1.30. Excluded from the Settlement Class are: (i) SAG-AFTRA and its respective officers and directors; (ii) the Judge(s) to whom the action is assigned and any member of those Judges' staff or immediate family members; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge." *Id.*

The Court granted provisional certification of the Settlement Class for settlement purposes. PAO, at 10. On January 26, 2026, Counsel for Defendant provided Kroll with a data file, and after analyzing the file for duplicate and incomplete records, the final Class List was confirmed to contain

94,233 Settlement Class Members. Kroll Decl. ¶ 5.

**B. Settlement Benefits**

**1. Monetary Relief**

The Settlement provides significant relief to the Class through a $950,000 common settlement fund. Under the Settlement, any member of the Class who has suffered a monetary loss due to the Data Incident is eligible to receive up to $5,000 for Out-of-Pocket Expense reimbursement. SA ¶¶ 1.33, 2.3.

In addition to the Out-of-Pocket Expense Reimbursement, the Settlement Agreement also provides for *pro rata* payments to all Settlement Class Members who submit claims for such. *Id.* ¶ 2.3.2. The *pro rata*-payments will be made as follows: each Settlement Class Member who selects this benefit will receive one (1) share of the Settlement Remainder, and each Settlement Class Member that is a California Resident will receive two (2) total shares of the Settlement Remainder, in recognition of their statutory claims. Settlement Class Members who submit a claim of Out-Of-Pocket Expenses will automatically be deemed to have submitted a claim for one (1) share of the Settlement Remainder, unless they indicate on the Claim Form that they are a California resident and are seeking two (2) shares. *Id*. California Residents must provide proof of California residency. *Id*.

**2. Credit Monitoring and Identity-Protection Services Benefit**

In addition to establishing a non-reversionary settlement fund, Defendant will separately fund credit monitoring and identity-protection services. Regardless of whether Settlement Class Members file a claim, they will receive an activation code on the Short Form Notice enabling them to activate eighteen (18) months of CyEx Medical Shield Complete, a medical information protection and monitoring service offered through CyEx. *Id*. ¶ 2.4.

**3. Business Practice Commitments**

As a result of this settlement, Defendant has also agreed to implement administrative and technical cybersecurity measures and provided counsel with a confidential declaration detailing those measures and their costs. S.A. ¶ 2.5.

**4. Class Notice and Claims Administration**

The parties agreed to the appointment of Kroll as Claims Administrator and Kroll's costs will be paid from the Settlement Fund. *Id.* ¶ 3.3. Notice was given to the Class via individual notice, sent by first-class mail and email. Kroll Decl. ¶¶ 10-11.

After deleting duplicates from the initial list of 94,575 Class Member records it received, Kroll confirmed the final Class List to contain 94,233 unique Settlement Class Members. *Id.* ¶ 5. After running the addresses through the USPS's National Change of Address database, Kroll sent Short Notices to 70,760 Class Members with valid mailing addresses via the United States Postal Service ("USPS"). *Id*. In addition to the direct notice sent via USPS, Kroll also sent Short Notice via email to 23,473 Class Members. *Id.* ¶ 11. Of those emails attempted for delivery, 2,219 emails were rejected/bounced back as undeliverable. Kroll then sent via first-class mail to the 2,219 Settlement Class Members for whom Email Notice was undeliverable. *Id.* Kroll believes that the Short Notices reached 91,350 of the 94,233 Class Members for a reach rate of approximately 96.9% significantly more than the Federal Judicial Center Guidelines which state that a reach rate of 70% is considered high percentage for a notice campaign. *Id.* ¶ 14.

Kroll established a dedicated Settlement Website, https://www.saghpsettlement.com, which contains information on the Litigation, including a summary of the settlement, important dates and deadlines, contact information for Kroll, answers to frequently asked questions, copies of the Settlement and notice documents, and allowed Class Members to file a Claim Form online. *Id.* ¶ 6. Kroll also established a toll-free telephone number that Class Members could call to obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system and/or through speaking with a live operator. *Id.* ¶ 7. As of July 28, 2026, the IVR system has received 749 calls, and 456 callers have been connected to live operators. *Id.*

**C. Attorneys' Fees and Expenses and Service Awards to Plaintiff**

Under the terms of the Settlement Agreement, Settlement Class Counsel moved the Court for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed 33.3% of the Settlement Fund ($316,350). SA ¶ 7.2. Additionally, Settlement Class Counsel may

seek an order from the Court for reimbursement of reasonable amount of litigation costs and expenses. *Id.* This amount represents a negative multiplier of 0.62 on Settlement Class Counsel's lodestar as of the filing of the Motion for Attorneys' Fees and does not account for all subsequent work by Settlement Class Counsel. Mem. of Points and Authorities in Support of Pl.'s Mtn. for Attys' Fees, Expenses, and Services Awards 14, ECF No. 53-1. Settlement Class Counsel has also incurred a total of $16,162.39 in litigation expenses for which they are seeking reimbursement. *Id.*, at 1. Finally, Plaintiffs request the Court grant their request for the Service Awards of $2,500 to each of the Plaintiffs, in light of their commitment to, and risks taken, in pursuing the Litigation on behalf of the Class. SA ¶ 7.3.

**D. Release**

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to "fully, finally, and forever released, relinquished, and discharged all Released Claims, and including Unknown Claims for Plaintiffs." SA ¶ 6.1. Released Claims do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.* ¶ 1.26.

## V. CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out was June 23, 2026. Kroll Decl. ¶ 20. As of the filing of this motion, four individuals have timely requested exclusion, and zero individuals filed an objection. *Id.* ¶ 21. The Claims Deadline was July 23, 2026. *Id.* ¶ 17. As of August 11, 2026, the Claims Administrator has received 224 Claim Forms through the mail and 8,944 Claim Forms filed electronically through the Settlement Website, for a total of 9,168 claims received. *Id.* ¶ 18. The 9,168 claims received results in a claims rate of approximately 10.1%, which is significantly higher than the range of claims rates in other data breach class action settlements within this Circuit. *See*, *Carter v. Vivendi Ticketing US LLC*, No. 8:22-01981-CJC, 2023 WL8153712 *9 (C.D. Cal.) (Claims rate of 1.6%); *Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-09600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8, 164 at 2 (Claims rate of 0.7%); *Cochran, et al. v. Kroger Co.*, No. 5:21-cv-01887, (N.D. Cal.), ECF Nos. 108 at 4-6, 108-1 ¶ 4 (Claims rate of 2.1%); *Atkinson et al. v. Minted, Inc.,* No. 3:20-cv-03869 (N.D. Cal.), ECF No. 71 at 4 (Claims rate of 3.5%).

## VI. LEGAL ARGUMENT

### A. The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its PAO and provisionally certified the Settlement Class for settlement purposes. *See* PAO, at 10. Plaintiffs respectfully submit the Court's original assessment was correct, and it should now certify the Settlement Class for settlement purposes.

#### 1. The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes approximately 94,233 individuals, Kroll Decl. ¶ 5; therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Hashemi v. Bosley*, No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117 *2 (C.D. Cal. 2022) ("Courts generally presume numerosity when there are at least 40 members in the proposed class." (citing *Charlebois v. Angels Baseball, LP*, No. 8:10-cv-00853, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011)). The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, satisfying the commonality requirement. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019); *Hashemi*, No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117, at *3. For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at

*5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' Private Information was compromised during the Data Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' Private Information and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc*., No. 2:12-cv-01983, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiffs allege that their Private Information was compromised, and that Defendant's same alleged poor data security practices caused them the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 131S.Ct. at 2541; *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiffs have no conflicts of interest with other class members, are not subject to unique defenses, and Plaintiffs and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Joint MFA Decl. ¶ 22. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. *Id.* As such, Plaintiffs' and Settlement Class Counsel's interests align with those of the Class. *Id.* Further, Settlement Class Counsel have decades of combined experience

as class action advocates and are well suited to litigate on behalf of the Class. *See id.* ¶ 20–21; *see also* MPA, Exs. B–D ("Firm Resumes"). Thus, Plaintiffs will adequately protect the interests of the Class.

**2. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement**

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon*, 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, No. CV 19-3440 FMO (FFMx), 2022 WL 1133818, at *9 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a *prima facie* showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, No. 8:16-cv-01037 JVS-JCG, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a *prima facie* showing on an issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, No. 2:16-cv-00237-JAK-GJS, 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect their Private Information. That question can be resolved using the same

evidence for all Class Members and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc.*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'") (citation omitted).

Rule 23(b)(3) also requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiffs' and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *Gregorson v. Toshiba America Business Solutions, Inc.*, No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589, at *3 (C.D Cal. 2025); *Hashemi*, No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117, at *4. Further, the Class consists of tens of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Incident. All these considerations demonstrate the superiority of a class action here.

**B. The Court Should Finally Approve the Settlement**

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

**1. The Strength of Plaintiffs' Case**

Plaintiffs believe they have a strong case for liability. In particular, Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's Private Information. Joint MFA Decl. ¶ 23. Moreover, Plaintiffs believe that once they establish that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. *Id.* ¶ 24. However, Plaintiffs' success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*; *see also Dennis v. Kellogg Co.*, No. 3:09–CV–1786-L-

WMC, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Joint MFA Decl. ¶ 24.

**2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Although Plaintiffs believes their case is strong, substantial risk is inherent in all cases. This case involves a proposed class of approximately 94,233 individuals and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—data breach class actions are particularly risky and complex. *See, e.g.*, *McDaniel v. Toshiba Glob. Com. Sols., Inc.*, No. 8:24-cv-01772-FWS-ADS, 2025 WL 3190888, at *6 (C.D. Cal. Oct. 3, 2025) ("There are also significant risks associated with class certification, summary judgment, and trial, especially in this data breach case when tying Plaintiff's alleged injuries to this particular data breach may be difficult."); *In re Anthem Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel."); *Smith v. Specialty Networks LLC*, No. 1:24-cv-00286, 2025 WL 1944022, at *4 (E. D. Tenn. July 15, 2025) ([C]ontinued litigation would be expensive and delay potential recovery further. This is especially true because data breach cases are very complex . . . ."); *In re Netgain Tech., LLC*, No. 0:21-cv-01210, 2025 WL 3063288 (D. Minn. Nov. 3, 2025) (citing *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-02807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries always unpredictable."); *see also Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, No. 2024 WL 5187565, at *3 (D. Kan. Dec. 20, 2024) ("Cost and risk are an especially salient concern in the data breach context because such cases 'are

particularly risky, expensive, and complex.'") (citing *Beasley v. TTEC Servs. Corp.*, No. 22-CV-00097-PAB-STV, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024)); *Mikell v. Tycon Med. Sys., Inc.*, No. 2;25-cv-19, 2025 WL 720001, at *4 (E.D. Va. Mar. 6, 2025) ("Moreover, data breach class action cases are "particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.'") (quoting *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019)). Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law and well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Moreover, the path to a class-wide monetary judgment remains uncertain, particularly in the area of damages. *McDaniel*, 2025 WL 3190888, at *6. The damages methodologies remain largely untested in a disputed class certification setting and in front of a jury. *See Hashemi*, No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117, at *4 (explaining that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"). As in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 3:14-cv-01372, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

**3. The Risk of Maintaining Class Action Status Through Trial**

The Court's PAO analyzed the requirements of Rule 23, found the requirements satisfied, and conditionally certified the Settlement Class. Nothing has changed that would affect the Court's ruling on class certification. For the reasons stated in the MPA and the PAO, the Court's certification of the Settlement Class for settlement purposes only should be affirmed.

**4. Amount Offered in Settlement**

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, No. CV 08-03800 GAF (MANX), 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides substantial monetary relief to Class Members who submit valid Claim Forms. *See* SA ¶¶ 2.2-2.3. The settlement also involves significant business practice enhancements for Defendant's data security system, which will help to protect the Settlement Class's PII going forward. *Id.* ¶ 2.5. The $950,000 settlement fund, excluding the non-cash benefit, represents a recovery of approximately $10.08 per Settlement Class Member,[3] which is on the higher end of recoveries in data breach class actions, as can be seen from the following chart of representative cases:

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member |
|---|---|---|---|
| *Nguyen v. Crystal Bay Casino*, No. 3:23-cv-00092 (D. Nev.) | 92,950 | 675,000 | $7.18 |
| *In re Kannact, Inc.,* No. 6:23-cv-01132 (D. Ore.) | 109,210 | $700,000 | $6.40 |
| *In re Blackhawk Network Data Breach Litig.*, No. 22-cv-07084-CRB (N.D. Cal.) | 165,727 | $985,000 | $5.94 |
| *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-02807, 2019 WL 3773737, at *3, 5 (N.D. Ohio Aug. 12, 2019). | 1.5M | $4.325M | $2.88 |
| *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 WL 3362028, at *7–8 (C.D. Cal. Apr. 2, 2021). | 441K | $625K | $1.42 |

[3] Per capita amount is calculated by dividing the total settlement amount by the total number of class members, before deducting litigation costs, administration costs, and attorneys' fees. In this case, it would divide the common fund ($950,000) by the total number of Class members (94,233).

Moreover, the non-cash benefits of 18 months of CyEx Medical Shield complete made available to every Settlement Class Member without the need to submit a claim and substantial business practice changes to further protect Plaintiffs' and Class Members' Private Information moving forward are both paid for separate and apart from the Settlement Fund, representing substantial additional benefits to the Class beyond the cash Settlement Fund. Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the present settlement represents an excellent, as well as a fair, reasonable, and adequate compromise of Plaintiffs' and the Settlement Class Members' claims. Joint MFA Decl. ¶ 25.

The benefits to the class are far superior to those offered in the above cases, as all Settlement Class Members are receiving substantial benefits, including reimbursement for: (i) Out-of-Pocket Expense Reimbursement of up to $5,000; (ii) a *Pro Rata* Cash Payment based on shares to Settlement Class Members who submit a Valid Claim to receive this benefit, with each Claimant who is not a California resident receiving one share of the Settlement Remainder, and each Claimant that is a California Resident receiving two total shares of the Settlement Remainder, (iii) 18-months of CyEx Medical Shield Complete, paid for by Defendant separate and apart from the Settlement Fund. SA ¶ 2.3.1-2.4.

Because the settlement here is similar to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

**5. The Extent of Discovery Completed and the Stage of Proceedings**

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered all of the information that was available regarding Defendant and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to its customers and various states' Attorneys General. Joint MFA Decl. ¶ 26.

Additionally, Defendant provided informal discovery regarding the Settlement Class during the course of settlement negotiations. Settlement Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending significant time and money to come up to speed on the subject area. *Id.*, ¶ 21. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. 5:16-cv-01186, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiffs made a decision fully informed about the strengths and weaknesses of this case.

**6. The Experience and Views of Counsel**

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Incident, which impacted approximately 94,233 individuals. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint MFA Decl. ¶ 20–21. Having worked on behalf of the Class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. *Id.* ¶ 27. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

**7. The Reaction of the Class Members to the Proposed Settlement**

The deadline to object or opt-out was June 23, 2026. In response to 91,350 Class Members reached, zero objections have been filed, and four individuals have requested exclusion. Kroll Decl. ¶ 21. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

**8. Lack of Collusion among the Parties**

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not discuss the amount of Attorneys' Fees and Expenses Award and/or Service Awards to Plaintiffs. SA ¶ 7.1. The Settlement Agreement was negotiated during numerous and periodic arms'-length negotiations. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint MFA Decl. ¶ 6-8, 20–21. Thus, the Court can be assured that the negotiations were not collusive.

**9. The Settlement Treats Settlement Class Members Equitably**

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, without preferential treatment. While Plaintiffs seek Court approval of a service award, as explained in detail in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, ECF No. 53-1, the award of $2,500 to each Plaintiff aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

As such, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### C. The Court Should Affirm Its Appointment of Settlement Class Counsel and Class Representatives

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.).

The Court should affirm its appointment of Gregory Haroutunian, Yana Hart, and John J. Nelson as Settlement Class Counsel. Here, Settlement Class Counsel has successfully steered this matter through the hard-fought negotiations and this settlement approval process, and they have proven themselves capable of representing the Class and producing significant results. Moreover, Class Counsel has significant experience in consumer class litigation and especially in privacy litigation. Joint MFA Decl. ¶ 20–21. Additionally, this Court should affirm its conditional appointment of Plaintiffs as Class Representatives. Plaintiffs have represented the Class admirably and have at all times assisted Settlement Class Counsel in prosecuting this matter as was necessary—as is evidenced by the outcome here. *Id.* ¶ 22.

### D. The Notice Program Comports with Due Process

Finally, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forwards and be heard.'" *Sankar v. Cal. Northstate Univ.,*

*LLC*, No. 2:24-cv-00473-DAD-JDP, 2025 WL 3539089, at * 14 (E.D. Cal. Dec. 10, 2025) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted)).

Here, the notice program meets this standard. Indeed, the Court approved the proposed notice program in the original settlement agreement subject to amendments to the Short Notice and Long Notice, which was implemented thereafter. *See* PAO; SA § 3. The notice program has now been fully carried out by Kroll, as described above. Notice was provided to 91,350 members of the Settlement Class. Kroll Decl. ¶ 14. Moreover, Kroll established a Settlement Website containing all important information, frequently asked questions, contact information for Kroll, and all relevant documents, including the Settlement Agreement, preliminary approval order, and notice documents. *Id.* ¶ 6. The Settlement Website provided Class Members with the ability to file a claim electronically. *Id.* Kroll also established a toll-free help line and an e-mail address to receive and reply to email inquiries from Settlement Class members pertaining to the settlement. *Id.* ¶¶ 7, 9. Accordingly, the Notice Program meets the requirements of Due Process and Rule 23.

## VII. CONCLUSION

For these reasons, Plaintiffs respectfully request this Court (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel Gregory Haroutunian of Emery Reddy, PC, Yana Hart of the Clarkson Law Firm, P.C., and John J. Nelson of Milberg, PLLC; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

Date: August 13, 2026

Respectfully Submitted,

*/s/ Gregory Haroutunian*

Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
333 University Avenue, Suite 200
Sacramento, CA 95825
Telephone: (916) 823-6955
*gregory@emeryreddy.com*

Yana Hart (SBN 306499)
**CLARKSON LAW FIRM, P.C.**
*yhart@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6792 words, which complies with the word limit of L.R. 11-6.1.

By: */s/Gregory Haroutunian*
Gregory Haroutunian

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Gregory Haroutunian*
Gregory Haroutunian